# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| KATRINA L. SCOTT, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-16-494-KEW |
| | ) |
| NANCY A. BERRYHILL, Acting | ) |
| Commissioner of Social | ) |
| Security Administration, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

Plaintiff Katrina L. Scott (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the determination of this Court that the Commissioner's decision be REVERSED and REMANDED for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ."

42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); *see also*, Casias, 933 F.2d at 800-01.

### Claimant's Background

Claimant was 46 years old at the time of the ALJ's latest decision. Claimant obtained a GED and attended two years of college, obtaining an associates degree in criminal justice. Claimant has worked in the past as a clerical worker/bookkeeper.

Claimant alleges an inability to work beginning April 1, 2007 due to limitations resulting from back problems, numbness in the legs, and bladder problems.

**Procedural History**

On October 15, 2009, Claimant protectively filed for supplemental security income pursuant to Title XVI (42 U.S.C. § 1381, *et seq.*) of the Social Security Act. Claimant's application was denied initially and upon reconsideration. After an administrative hearing, the Administrative Law Judge ("ALJ") issued an unfavorable decision on March 3, 2011. The Appeals Council denied review but this Court reversed and remanded the decision on appeal.

On September 16, 2013, the ALJ conducted a second administrative hearing. On January 14, 2014, the ALJ issued an unfavorable decision. The Appeals Council declined to review the decision on April 14, 2014. By Order and Judgment entered November 17, 2015, this Court again reversed the ALJ's decision and remanded the case for further proceedings.

After a supplemental hearing on remand, ALJ Doug Gabbard, II entered a third unfavorable decision on September 1, 2016. Claimant did not file written exceptions with the Appeals Council so that body did not assume jurisdiction over the case. As a

4

result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.984, 416.1484.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step four of the sequential evaluation. He determined that while Claimant suffered from severe impairments, she retained the residual functional capacity ("RFC") to perform her past relevant work.

**Error Alleged for Review**

Claimant asserts the ALJ committed error in finding Claimant could perform full range of light work.

**RFC Determination**

In his decision, the ALJ determined Claimant suffered from the severe impairments of degenerative disc disease of the spine and neurogenic bladder. (Tr. 698). The ALJ concluded Claimant retained the RFC to perform the full range of light work. (Tr. 701). After consultation with a vocational expert, the ALJ found Claimant could perform her past relevant work as a file clerk. (Tr. 704). Based upon this finding, the ALJ determined Claimant was not under a disability since October 15, 2009. Id.

Claimant contends the ALJ's RFC determination was erroneous and not based on substantial evidence because it failed to address

5

the limitation imposed by her severe impairment bladder problems. This request for review appears remarkably similar to the last that came before this Court. The ALJ determined Claimant's neurogenic bladder constituted a severe impairment at step two. (Tr. 698). On April 20, 2010, Claimant was treated at the urology department of the University of Oklahoma College of Medicine for bladder voiding dysfunction. After a cystoscopy, her bladder was unremarkable but it showed a decreased capacity, involuntary contractions, and Claimant demonstrated an inability to void. (Tr. 440).

On September 6, 2013, Claimant presented to the Urological Specialists of Oklahoma for bladder voiding dysfunction. She self-catheterized six times daily and three times at night, based on urgency. Claimant denied daytime urinary leakage or leakage with minimal or strenuous activity. She did not have total incontinence. She did experience urinary hesitancy and strained to urinate. She often had poor urinary flow and often had intermittency. Claimant had incomplete bladder emptying and experienced pain with bladder filling. (Tr. 668). Dr. Scott E. Litwiller determined Claimant suffered from a neurogenic bladder from cauda equine syndrome after a motor vehicle accident and was dependent on intermittent catheterizations, then at six to eight

6

times daily. He found she would require these catheterizations indefinitely. (Tr. 671). The ALJ noted these findings in his decision. (Tr. 702).

Claimant testified she had problems voiding her bladder and urinated blood. (Tr. 497). She stated that she required self-catheterization six to eight times per day and took medication for her bladder condition which helped with frequency. (Tr. 498, 731). Claimant does not catheterize at the same times every day. It takes her about 10-20 minutes each time she catheterizes. (Tr. 733).

The ALJ did not expressly include any limitation in the RFC upon work-related activities based upon Claimant's neurogenic bladder or confirmed need to self-catheterize. (Tr. 701). Instead, the ALJ concluded with regard to this condition as follows:

> In sum, the above residual functional capacity assessment is supported by the evidence of record. The undersigned finds the claimant can perform the full range of light exertional level work. In considering the claimant's neurogenic bladder, the undersigned does not find the claimant requires special accommodations. For example, she does not have leakage with strenuous activity and she denied reported (sic) only mild urgency when taking her medication (Exhibit 32F, Page 3). Further, the claimant has not reported any difficulty with her catheter.
>
> (Tr. 703-04).

7

In her briefing, Defendant contends that normal breaks during the workday accommodated Claimant's need to self-catheterize. The ALJ never made such a finding and his questioning of the vocational expert did not include questions concerning the required 10-20 minute breaks for Claimant's required self-catheterizations.

The ALJ's first hypothetical assumed "a hypothetical person the same age, education, and work experience as Claimant who can perform light work." The vocational expert stated the person could perform Claimant's past relevant work as a file clerk. (Tr. 735).

The second hypothetical assumed

> a hypothetical person the same age, education, and work experience as the claimant who can perform light work but must avoid even moderate exposure to dust, fumes, odors, gases, and other pulmonary irritants.

Id.

The vocational expert again stated the person could perform Claimant's past relevant work as a file clerk. Id.

The third hypothetical question assumed

> a third hypothetical person the same age, education, and work experience as Ms. Scott, who can only do sedentary work with no use of foot controls bilaterally; no overhead reaching bilaterally; occasional climbing of ramps an stairs; no climbing of ladders, ropes, or scaffolds; occasional balancing, stooping, kneeling, crouching, and crawling. She must avoid all exposure to unprotected heights, moving mechanical parts, and temperature extremes. She will need about two

> unscheduled work breaks per day to self-catheterize and
> additional catheterizations that can be accommodated by
> normal breaks and lunch.

(Tr. 735-36).

The vocational expert testified the person could not perform Claimant's past relevant work. She also testified that there would be no other jobs in the state or national economy which this person could perform. (Tr. 736).

The ALJ's fourth hypothetical included the limitations of

> a fourth hypothetical person the same age, education, and
> work experience as the claimant, who can perform light
> work eighter with or without respiratory limitations that
> I gave you for Hypothetical 2. But this person is going
> to need the following additional limitations: They must
> be allowed frequent, unscheduled work breaks and work
> absences.

Id.

The vocational expert testified that the person could not perform Claimant's past relevant work or any other work in the state or national economy. Id.

Defendant argues that Claimant actually only catheterized two to three times during the workday based upon urination every three hours. However, the evidence indicates she required catheterization six to eight times during the day and an additional three times at night. (Tr. 668). Urination three times per day

9

does not necessarily reduce the number of required catheterizations. Defendant also fails to account for the fact that the catheterizations are not required on a set schedule, which would belie any reliance upon a "morning break, lunch break, and afternoon break." Moreover, again, the ALJ did not state that this was his intended reasoning within the decision. As the vocational expert's testimony indicated, if Claimant required catheterization outside of these employer imposed break times as the medical evidence demonstrated, no employment was available to Claimant, including her past relevant work.

"[R]esidual functional capacity consists of those activities that a claimant can still perform on a regular and continuing basis despite his or her physical limitations." White v. Barnhart, 287 F.3d 903, 906 n. 2 (10th Cir. 2001). A residual functional capacity assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts ... and nonmedical evidence." Soc. Sec. R. 96-8p. The ALJ must also discuss the individual's ability to perform sustained work activities in an ordinary work setting on a "regular and continuing basis" and describe the maximum amount of work related activity the individual can perform based on evidence contained in the case record. Id. The ALJ must "explain how any material

10

inconsistencies or ambiguities in the evidence in the case record were considered and resolved." Id. The ALJ has again failed to account for the limitations set forth in the medical evidence regarding Claimant's need for 10-20 minute breaks six to eight times per workday for self-catheterization. He has failed to properly explain the basis for omitting the medically determined limitations at step four and five of a condition which he found to be a severe impairment at step two. Soc. Sec. R. 96-8p; Timmons v. Barnhart, 2004 WL 2005931, *4 (10th Cir. 2004).

## Conclusion

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be and is **REVERSED and the matter REMANDED** for further proceedings consistent with this Opinion and Order.

DATED this 21st day of March, 2018.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE